# IN THE SUPREME COURT OF IOWA

No. 07–1416

Filed April 17, 2009

**JOEL GOOSMAN,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

---

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

Applicant appeals from the dismissal of his application for postconviction relief asserting that it is unconstitutional to apply *State v. Heemstra* prospectively only. **AFFIRMED.**

Martha M. McMinn, Sioux City, and Gary Dickey, Jr. of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor and Thomas S. Tauber, Assistant Attorneys General, Patrick Jennings, County Attorney, and Mark Campbell, Assistant County Attorney, for appellee.

Edward Bull of Bull Law Office, PC, Des Moines, for amici curiae Robert Henry, Timothy Palmer, and Dennis Gress, Iowa inmates.

**APPEL, Justice.**

This case presents the issue of whether federal due process requires our decision in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), be applied retroactively to persons whose direct appeals were final prior to the issuance of the *Heemstra* decision. We conclude that this constitutional provision does not require that the *Heemstra* decision be applied in such cases.

## I.  Factual and Procedural History.

In 1992, Joel Goosman was charged with first-degree murder in connection with the shooting death of Chad Mackey. The State proceeded on two alternate first-degree murder theories, premeditation with malice aforethought and felony murder.

The underlying felony alleged in the trial information was willful injury. The jury was instructed that the State must prove the malice aforethought element required for a first-degree murder conviction and either that the "defendant acted willfully, deliberately, premeditatedly, and with specific intent to kill," or, in the alternative, that Goosman shot Mackey with the intent to cause a serious injury and that Mackey sustained a serious injury.

The jury convicted Goosman of first-degree murder, and he was sentenced to life imprisonment. The conviction was affirmed by the court of appeals on November 28, 1994.

Almost twelve years after the direct appeal of Goosman's conviction was finalized, this court decided *State v. Heemstra* on August 25, 2006. In *Heemstra*, this court reversed a murder conviction holding that because the act causing willful injury was the same act that caused the victim's death, the assault necessarily merged into the murder and thus could not serve as a predicate felony for felony murder purposes.

*Heemstra*, 721 N.W.2d at 558. Because Heemstra had been convicted on a general verdict which could have rested on either a felony-murder theory or on a finding of premeditation with malice aforethought, this court vacated his conviction. *Id.* at 558–59.

The State filed a motion for rehearing. In the rehearing motion, the State urged this court to clarify its ruling by holding that the decision did not apply retroactively to postconviction actions. This court subsequently modified its ruling to state that the holding applied only to cases where the issue was raised and where there was no final disposition on direct appeal. *Id.* at 558.

On February 23, 2007, Goosman filed this application for postconviction relief. Goosman argued that federal due process requires the *Heemstra* decision be applied retroactively in postconviction-relief proceedings. Goosman sought to have his conviction vacated and a new trial granted or, in the alternative, to have his conviction reduced to second-degree murder. The district court denied relief. Goosman filed this timely appeal.

## II. Standard of Review.

Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law. *Harpster v. State*, 569 N.W.2d 594, 596 (Iowa 1997). However, when the applicant alleges constitutional error, review is de novo "in light of the totality of the circumstances and the record upon which the postconviction court's rulings was made." *Giles v. State*, 511 N.W.2d 622, 627 (Iowa 1994).

## III. Discussion.

**A. The *Heemstra* Decision.** Under Iowa law, a defendant may be convicted of first-degree murder if the defendant "willfully, deliberately, and with premeditation kills another person." Iowa Code § 707.2 (2009).

In the alternative, a person may be convicted of first-degree murder if the defendant "kills another person while participating in a forcible felony." *Id.*

The second alternative is commonly known as the felony-murder rule. In seeking a conviction under the felony-murder rule, the State is not required to show willfulness, deliberation, or premeditation. The mental element of the crime is imputed from the commission of the underlying felony. *State v. Williams*, 285 N.W.2d 248, 270 (Iowa 1979). Under this alternative, the State need only prove that the homicide occurred in the perpetration of a forcible felony. *Id.*

One of the questions that arises under Iowa's version of the felony-murder rule is whether a felonious assault, such as willful injury under Iowa Code section 708.4, may serve as the predicate felony for felony-murder purposes. In other words, can the same act that causes the death of another serve as the underlying felony or does that act merge with the homicide unless the felonious assault is a separate and distinct action?

We first considered this question in *State v. Beeman*, 315 N.W.2d 770 (Iowa 1982). In *Beeman*, the defendant kicked and choked the victim before inflicting seventeen wounds to the chest. *Beeman*, 315 N.W.2d at 772. Under these facts, there was ample evidence to convict the defendant of first-degree murder even if the court adopted a requirement that the underlying felony be independent of the act causing death. This court, however, elected to announce a broader approach, namely, that felonious assaults could serve as predicate felonies as merger rules do not apply. *Id.* at 777. The approach in *Beeman* was vigorously upheld in subsequent cases. *See State v. Mayberry*, 411 N.W.2d 677, 682–83 (Iowa 1987) (noting "[w]e rejected the legal premise

[merger] . . . in *State v. Beeman*"); *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988) ("We see no reason to retreat from our previous decisions."); *State v. Rhomberg*, 516 N.W.2d 803, 805 (Iowa 1994) ("We have now reexamined the argument . . . and confirm our prior analyses."); *State v. Anderson*, 517 N.W.2d 208, 214 (Iowa 1994) ("We have steadfastly declined these invitations to disavow the principles established in *Beeman* . . . [a] settled construction. . . .").

In *Heemstra*, this court once again revisited the question. *Heemstra*, 721 N.W.2d at 554–58. The court noted that the felony-murder approach under *Beeman* and its progeny was far broader than the approach employed in other states under similar statutes and by other state courts. *Id.* at 556–58. We further noted that *Beeman* had been subject to local criticism on the ground that it unduly expanded the felony-murder rule far beyond that intended by the legislature. *Id.* at 555–56.

After reconsidering the issue, we held in *Heemstra* that where the act causing willful injury is the same act that caused the victim's death, the former merges with the murder and cannot serve as a predicate felony for felony-murder purposes. *Id.* at 558. This is not to say, however, that willful injury could *never* serve as the predicate felony for felony-murder purposes. We narrowed *Heemstra*'s scope by noting, for example, that where a "defendant assaulted the victim twice, first without killing him and second with fatal results," only the second act would be merged with the murder and that the first act could be considered as a predicate felony. *Id.* at 557. Thus, the merger rule announced in *Heemstra* applied only in cases involving a single felonious assault on the victim which results in the victim's death.

Our original opinion in *Heemstra* disposed of the case before us, but did not address the question of whether and how the decision would be applied to other cases. On rehearing, we modified the opinion to state,

> The rule of law announced in this case regarding the use of willful injury as a predicate felony for felony-murder purposes shall be applicable only to the present case and those cases not finally resolved on direct appeal in which the issue has been raised in the district court.

*Id.* at 558.

A number of subsequent cases have challenged the constitutionality of this statement. Goosman asserts that the federal guarantees of due process and equal protection and the separation of powers doctrine require retroactive application of *Heemstra* to his postconviction-relief proceeding.

**B. Federal Due Process.** At the outset, the threshold question in considering whether federal due process requires a judicial decision be applied to postconviction relief proceedings is whether the decision is substantive or procedural. *Schriro v. Summerlin*, 542 U.S. 348, 352–53, 124 S. Ct. 2519, 2522–23, 159 L. Ed. 2d 442, 449 (2004). Here, the parties agree that our decision in *Heemstra* was substantive rather than procedural in nature.

Federal precedent concerning the application of substantive law in collateral proceedings, therefore, guides our analysis. The United States Supreme Court has recently considered the question of retroactive application of *state* court judicial decisions affecting substantive criminal law in two cases, *Fiore v. White*, 531 U.S. 225, 121 S. Ct. 712, 148 L. Ed. 2d 629 (2001), and *Bunkley v. Florida*, 538 U.S. 835, 123 S. Ct. 2020, 155 L. Ed. 2d 1046 (2003).

In *Fiore*, the Supreme Court considered the constitutionality of the defendant's conviction for violating a state statute that prohibited operating a waste facility without a permit. *Fiore*, 531 U.S. at 226, 121 S. Ct. at 713, 148 L. Ed. 2d at 632. Fiore was convicted of the offense even though he actually had a permit to operate the facility in question. *Id.* at 227, 121 S. Ct. at 713, 148 L. Ed. 2d at 632. The prosecution successfully asserted, however, that his activities exceeded the scope of the operations authorized by the permit and Fiore was convicted of the offense. *Id.* The Pennsylvania Supreme Court declined review, and Fiore's conviction became final. *Id.*

After Fiore's conviction became final, the Pennsylvania Supreme Court reviewed the conviction of Fiore's co-defendant, David Scarpone, who was convicted of the same offense. *Id.* In that case, the Pennsylvania Supreme Court held that the underlying statute was inapplicable to persons that held a valid permit. *Id.* A person who merely deviated from the permit's terms, such as Fiore, could not violate the statute. *Id.*

Based on the Pennsylvania Supreme Court's decision in *Commonwealth v. Scarpone*, 634 A.2d 1109, 1113 (Pa. 1993), Fiore collaterally challenged his conviction. *Id.* His claims were rejected in state courts. *Id.* He then filed an application in federal court for habeas relief, which was granted by the federal district court. *Id.* The Third Circuit reversed, reasoning that " 'state courts are under no [federal] constitutional obligation to apply their decisions retroactively.' " *Id.* at 227–28, 121 S. Ct. at 714, 148 L. Ed. 2d at 633 (quoting *Fiore v. White*, 149 F.3d 221, 222 (3d Cir. 1998)).

The United States Supreme Court granted certiorari and certified a question to the Pennsylvania Supreme Court. *Id.* Specifically, the

Supreme Court inquired whether the state court's decision interpreting the statute was a new interpretation, or whether it was "the correct interpretation of the law of Pennsylvania at the date Fiore's conviction became final?" *Id.* The Pennsylvania Supreme Court responded,

> "*Scarpone* did not announce a new rule of law. Our ruling merely clarified the plain language of the statute. . . . Our interpretation . . . in *Scarpone* furnishes the proper statement of law at the date Fiore's conviction became final."

*Id.* (quoting *Fiore v. White*, 757 A.2d 842, 848–49 (Pa. 2000)).

The United States Supreme Court held that because the issue decided in *Scarpone* was "not new law" but simply the Pennsylvania Supreme Court's first gloss on the statute, an issue of "retroactivity" was not raised. *Id.* The only question was whether federal due process prevented Pennsylvania from convicting Fiore for conduct that its criminal statute, as properly interpreted, did not prohibit *at the time of his conviction. Id.* The Supreme Court reversed Fiore's conviction on due process grounds because the state did not prove each element of the crime beyond a reasonable doubt. *Id.* (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375 (1970)).

The Supreme Court revisited the issue of decisional retroactivity in *Bunkley*. In *Bunkley*, the defendant had been convicted of burglary in the first degree under a Florida statute which provided increased penalties for burglary when the perpetrator is armed with a "dangerous weapon." Bunkley, 538 U.S. at 836, 123 S. Ct. at 2021, 155 L. Ed. 2d at 1049. The statute, however, explicitly exempted the "common pocketknife" from the term "dangerous weapon." *Id.* at 837, 123 S. Ct. at 2021, 155 L. Ed. 2d at 1049. In Bunkley's case, the dangerous weapon at issue was a pocketknife with a two-and-a-half to three-inch blade. *Id.*

at 836, 123 S. Ct. at 2021, 155 L. Ed. 2d at 1049. His conviction was affirmed on appeal in 1989.

In 1997, the Florida Supreme Court in *L.B. v. State,* 700 So. 2d 370, 373 (Fla. 1997), considered the meaning of the term "common pocketknife" in the statute for the first time. *Id.* at 837, 123 S. Ct. at 2021, 155 L. Ed. 2d at 1049. The Florida court held "that a pocketknife with a blade of 3 3/4 inches 'plainly falls within the statutory exception' " for the common pocketknife. *Id.* (quoting *L.B.,* 700 So. 2d at 373). After the *L.B.* decision, Bunkley filed an application for postconviction relief in state court. *Id.* at 838, 123 S. Ct. at 2021, 155 L. Ed. 2d at 1050. The Florida Supreme Court, however, held that its decision in *L.B.* was not retroactive, ignoring *Fiore* analysis, because only "jurisprudential upheavals," as opposed to "evolutionary refinements," warranted retroactive application. *Id.* at 838, 123 S. Ct. at 2022, 155 L. Ed. 2d at 1050.

The United States Supreme Court ruled that the Florida court erred in not considering the *Fiore* question—in light of *L.B.,* what was the meaning of the pocketknife exception at the time of Bunkley's conviction. *Id.* at 840, 123 S. Ct. at 2023, 155 L. Ed. 2d at 1051. The Supreme Court recognized that while the Florida statute had not changed since 1901, the Florida Supreme Court may have "changed" the law through its decisional precedents. *Id.* at 841–42, 123 S. Ct. at 2023–24, 155 L. Ed. 2d at 1052. The case was remanded to determine precisely what the law was at the time of Bunkley's conviction. *Id.* at 842, 123 S. Ct. at 2024, 155 L. Ed. 2d at 1052–53.

Taken together, *Fiore* and *Bunkley* stand for two propositions. First, where a court announces a new rule of substantive law that simply "clarifies" ambiguities in existing law, federal due process requires that

the decision be retroactively applied to all cases, including collateral attacks where all avenues of direct appeal have been exhausted. Second, where a court announces a "change" in substantive law which does not clarify existing law but overrules prior authoritative precedent on the same substantive issue, federal due process does not require retroactive application of the decision.

The treatment of *Fiore* and *Bunkley* by other state courts confirms our analysis of the issue. For example, in *Clem v. State*, 81 P.3d 521, 523 (Nev. 2003), the Nevada Supreme Court considered whether federal due process required its overruling of prior precedent regarding the meaning of the term "deadly weapon" be applied in a state habeas corpus proceeding. 81 P.3d at 526. The Nevada Supreme Court ruled that because its recent case overruled a prior decision regarding the meaning of the term "deadly weapon," it amounted to a change in law, not a mere clarification, and that, as a result, there was no federal due process requirement that the change in law apply in the habeas proceeding. *Id.* at 529.

Other courts have employed a similar analysis to reach the conclusion that where a judicial decision works a change as compared to a clarification of substantive law, federal due process is not implicated. *See Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1335 n.12 (11th Cir. 2008); *Chapman v. LeMaster*, 302 F.3d 1189, 1197 n.4 (10th Cir. 2002); *Easterwood v. State*, 44 P.3d 1209, 1212–21 (Kan. 2002).

Goosman draws our attention to a number of cases, particularly *Schriro*, 542 U.S. at 348, 124 S. Ct. at 2519, 159 L. Ed. 2d at 442, *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998), and *In re Hinton*, 100 P.3d 801 (Wash. 2004). Each of these cases, however, is inapplicable as it involves a clarification of existing

law, not a change in law under the *Fiore-Bunkley* framework, involves application of a *federal* court decision, or constitutes a procedural rather than substantive change in the law. *Schriro*, 542 U.S. at 358, 124 S. Ct. at 2526, 159 L. Ed. 2d at 453 (holding a new procedural rule did not have to be applied retroactively where state faithfully applied the law as it understood it at the time); *Bousley*, 523 U.S. at 618, 118 S. Ct. at 1609, 140 L. Ed. 2d at 837 (discussing whether a first clarification of a federal statute by the United States Supreme Court should be applied retroactively); *In re Hinton*, 100 P.3d at 859–60 (holding a prior decision clarifying the state of the law at the time of the defendants' convictions must be applied retroactively).

We conclude that Goosman does not have a federal due process claim. Our ruling in *Heemstra* clearly involved a change in law and not a mere clarification. Thus, Goosman was convicted of first-degree murder under jury instructions, which properly stated the law at the time of his conviction. As a result, the limitation of retroactivity announced in *Heemstra* to cases on direct appeal where the issue has been preserved did not violate federal due process under *Fiore* and *Bunkley*.[1]

**C. Federal Equal Protection and Separation of Powers.** The State asserts that any claim on appeal based on equal protection and separation of powers has not been preserved. Our review of the record confirms that Goosman did not raise equal protection or separation of powers in his application for postconviction relief and the district court did not rule upon these issues. As a result, these issues cannot be raised for the first time on appeal. *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997).

---

[1]Because we have concluded that Goosman's federal due process claim is without merit, we do not decide whether his claim for postconviction relief was time-barred by operation of Iowa Code section 822.3.

**IV. Conclusion.**

For the above reasons, the decision of the district court dismissing Goosman's petition is affirmed.

**AFFIRMED.**