# IN THE COURT OF APPEALS OF IOWA

No. 12-2241
Filed August 13, 2014

**CALVIN NELSON,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Calvin Nelson appeals the denial of his postconviction-relief application. **AFFIRMED.**

Jessica Maffitt of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, J.**

A jury found Calvin Nelson guilty of first-degree murder in connection with the shooting of a man in a Des Moines neighborhood. The Iowa Supreme Court affirmed his conviction. *See State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). Nelson subsequently filed a postconviction-relief application raising several issues. The district court denied the application following a hearing. On appeal, Nelson contends (1) his postconviction attorney was ineffective in several respects and (2) his due process rights were violated in the underlying trial.

## I. *Ineffective Assistance of Postconviction Counsel*

Nelson claims he "was denied effective assistance of postconviction counsel because his counsel failed to timely investigate his case, file an amended application for postconviction relief, or even talk to [him]." Nelson further contends "[c]ounsel never conducted standard discovery, and therefore failed to collect and present evidence in support of [his] claims." He asserts that, "[a]s a direct result of counsel's failure to investigate and produce evidence in support of [his] claims, [his] postconviction application was denied."

To prevail, Nelson must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review is de novo. *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

We agree Nelson's postconviction attorney was initially dilatory in investigating the case and in filing an amended application for postconviction relief. At a hearing on a motion to postpone trial, the attorney conceded as much, stating he did not take steps to litigate the issues "in a timely fashion."

That said, he communicated with Nelson and eventually filed an amended and substituted postconviction-relief application.

In that application, Nelson's postconviction attorney (1) challenged the admission of "evidence of drug dealing" and (2) claimed trial counsel was ineffective in failing to (a) "raise defenses at trial and on appeal that would have shifted the burden of proof," (b) "impeach trial witnesses properly," (c) "seek an interlocutory appeal" of a district court order denying Nelson's motion for mistrial, (d) "object to the composition of the jury panel which lacked requisite minority representation," and (e) "investigate undue influence and/or intimidation of a witness (Roby) that resulted in altered testimony." As noted, the district court denied these claims. On our de novo review, we are not convinced the denial resulted from postconviction counsel's ineffectiveness, as Nelson now claims.

We begin with the drug-dealing evidence. The court explained that the admissibility of this evidence was raised and addressed at trial and was raised and addressed on direct appeal. *See Nelson*, 791 N.W.2d at 426 (addressing the admission of prior bad acts evidence). The court concluded there was no basis for a finding that trial counsel was ineffective "regarding this evidence."

Assuming without deciding this issue was indeed raised in the postcoviction application under an ineffective-assistance-of-counsel rubric, we agree with the district court that trial counsel did not breach an essential duty because the admissibility of this evidence was in fact raised at trial. That means postconviction counsel also could not have breached an essential duty with respect to this claim. At worst, counsel could be faulted for attempting to re-litigate the issue. *See Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986)

("Issues that have been raised, litigated, and adjudicated on direct appeal cannot be relitigated in a postconviction proceeding."). But he did so at Nelson's behest, raising all the issues previously raised in Nelson's pro se application for postconviction relief. Counsel's decision to accede to his client's demands did not amount to a breach of duty to his client.

We turn to the claim that trial counsel failed to raise "defenses." The postconviction testimony focused on the defense of intoxication and why it was not raised at trial. Nelson himself testified the defense was inconsistent with his claim of innocence. His trial attorney seconded this opinion. The district court concurred, concluding "it would have been improvident trial strategy to inject the defense of intoxication into the trial."

Appellate counsel now suggests the pursuit of this claim by Nelson's postconviction attorney, given Nelson's concession that an intoxication defense was inconsistent with his claim of innocence, "clearly demonstrates postconviction counsel did not conduct even the most basic investigation by discussing the claims with Nelson." We disagree.

Nelson's pro se postconviction-relief application asserted "counsel failed to raise defenses." Nelson's postconviction attorney simply re-asserted and expanded upon this allegation in his amended and substituted application. Nelson agreed he talked through the allegations with counsel "in length" and concurred in the grounds and explanation contained in the amended and substituted application. The fact that Nelson ultimately undermined his own "defenses" claim in his postconviction testimony does not mean postconviction counsel failed to properly investigate the claim.

This brings us to the third ineffective-assistance claim: whether trial counsel should have filed an interlocutory appeal from a mistrial ruling. The district court stated "there is no reasonable probability the Supreme Court would have interrupted the trial by granting an interlocutory appeal on this issue." The court's conclusion was supported by the testimony of Nelson's direct appeal attorney, who stated interlocutory appeals were "rare." Nelson does not explain how postconviction counsel was ineffective with respect to this issue.

Next is the ineffective-assistance claim concerning the composition of the jury pool. The district court noted that Nelson failed to present evidence to support this contention. On appeal, Nelson contends the failure to present evidence rests at the doorstep of postconviction counsel. Again, we disagree.

Following the original trial, Nelson raised the jury composition issue in a pro se new trial motion. He asserted "there was only (1) African American on the whole jury list. Meaning 1 out of 60 people. Thus making the jury duty list, un-racially balanced." The trial court denied the new trial motion. At the postconviction-relief hearing, postconviction counsel offered Nelson's pro se new trial motion as an exhibit and clarified that Nelson was presently raising the same claim under an ineffective-assistance-of-counsel rubric. He elicited testimony from Nelson that Nelson told his trial attorneys "he wanted somebody of a minority there" but he "didn't get that opportunity."[1] The precise issue Nelson now wishes his trial attorneys had raised was raised by him directly and was decided. Because this issue was raised and litigated at trial, we do not fault postconviction counsel for failing to pursue the issue.

---

[1] The court established that Nelson is African-American.

We are left with the claim that Nelson's trial attorneys failed to investigate the asserted undue influence of witness Roby. The district court found Nelson did not present evidence to support this claim. Nelson asserts that this reflects a breach of duty by postconviction counsel. Again, we disagree.

Nelson's trial attorneys raised the issue of certain contacts Roby had in the hallway of the courthouse and obtained a hearing outside the jury's presence on the nature of those contacts. Roby testified she was not persuaded or threatened to change her testimony as a result of the contacts. As this issue was raised and decided at trial, postconviction counsel had no obligation to re-litigate it. To satisfy his client, he did attempt to relitigate it, albeit cursorily. His attempt to abide by his client's wishes does not amount to the breach of an essential duty owing to Nelson.

There is one final issue that bears mention. Postconviction counsel elicited testimony from Nelson about certain witnesses who were not called at trial. The district court found there was no postconviction testimony "showing what their testimony might have been." On appeal, Nelson contends postconviction counsel should have called these individuals to the stand and he was ineffective in failing to do so. On our de novo review, we disagree.

Nelson testified at the postconviction hearing that the two witnesses he wished to have called "were interviewed, [] were questioned," and they said "that they had seen several people [at the scene] and they had given description of a car, two cars that they had seen at the scene." The trial record contains undisputed evidence that a number of people and more than one car were at the scene. The witnesses Nelson wished to call would have added little on that

score. Additionally, Nelson did not intimate that these witnesses would provide an alibi or identify someone else as the shooter. Absent some indication their testimony would be exculpatory, we conclude postconviction counsel breached no essential duty in declining to call them as witnesses at the postconviction hearing.

A third witness, James Brown III, who Nelson now claims would have exonerated him, was not alive. In any event, postconviction counsel elicited testimony from Nelson's trial attorney that an attempt was made to implicate Brown III in the shooting. This was partially accomplished through cross-examination of Brown's nephew, who testified for the State on direct examination that he and Brown III were at the home of his grandmother on the night of the shooting. In sum, Nelson's trial attorneys pursued the theory that Brown III was the shooter. For that reason, neither they nor Nelson's postconviction attorney breached an essential duty to Nelson.

## II. Due Process Violations

Nelson next contends "due process rights were violated by the court's denial of his motion for mistrial and denial of the opportunity to present expert witness evidence regarding the effect of crack use by witness Lester." This issue was neither raised in the postconviction court nor addressed by the postconviction court. Accordingly, it was not preserved for our review. *Goosman v. State*, 764 N.W.2d 539, 545 (Iowa 2009).[2]

---

[2] Nelson claims the issue was raised and decided, but the issue raised and decided was his trial attorneys' claimed "failure to properly impeach the credibility of Nelson's girlfriend Dody Lester." That is a different issue than the one he presently raises.

We affirm the denial of Nelson's postconviction-relief application.

**AFFIRMED.**