# IN THE COURT OF APPEALS OF IOWA

No. 13-1286
Filed November 13, 2014

**DANIEL RUSSELL PHILP,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Lee (South) County, Thomas
Reidel, Judge.


Petitioner appeals the denial of his application for postconviction relief.
**AFFIRMED.**



Thomas Hurd of Glazebrook, Moe, Johnston & Hurd, L.L.P., Des Moines,
for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney
General, and Michael P. Short, County Attorney, for appellee.



Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Daniel Philp appeals the district court's denial of his application for postconviction relief following trial on the same. We affirm the judgment of the district court.

In 2009, Philp was convicted of conspiracy to manufacture more than five grams of methamphetamine, in violation of Iowa Code section 124.401(b)(7) (2005). He was sentenced to thirty years' incarceration pursuant to a sentencing enhancement based on a prior conviction for possession of precursors with intent to manufacture. The facts and circumstances surrounding Philp's conviction for the conspiracy are set forth in *State v. Philp*, No. 09-0740, 2010 WL 1578011, at *1 (Iowa Ct. App. Apr. 21, 2010), in which we affirmed Philp's conviction and sentence on direct appeal.

In his application for postconviction relief, Philp contended his trial counsel provided constitutionally deficient performance by failing to call Philp's doctor to testify at trial. According to Philp, his doctor would have testified that Philp treated with the doctor for a medical condition. The fact of treatment, according to Philp, would have provided a legitimate and alternative explanation to the jury why Philp frequently purchased large quantities of pseudoephedrine. The district court denied Philp's claim, concluding Philp failed to establish prejudice.

Postconviction-relief proceedings are civil actions reviewable for correction of errors at law. *See Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009). To the extent an applicant raises constitutional questions, our review is de novo. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). An applicant for

postconviction relief claiming ineffective assistance of trial counsel must establish that trial counsel failed to perform an essential duty and that this failure resulted in prejudice. *See State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999). To establish counsel failed to perform an essential duty, "the applicant must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.* Regarding prejudice, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the applicant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* It is the applicant's burden to establish an entitlement to relief by a preponderance of the evidence. *See Ledezma*, 626 N.W.2d at 145.

We conclude Philp failed to establish he was prejudiced by counsel's failure to call his physician as a witness at trial. His claim thus fails. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010) (noting an ineffective-assistance claim may be resolved on the prejudice prong without considering whether counsel breached an essential duty); *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (stating failure to prove either element is fatal to the claim).

First, the exculpatory value of the doctor's proposed testimony is limited. The postconviction-relief record shows Philp treated with the doctor long prior to

the events relevant to his conviction and that the prescription written for Philp was not for the pseudoephedrine Philp purchased. Thus, in reality, the physician's testimony may have been inculpatory rather than exculpatory. In addition, the doctor's testimony regarding Philp would have been duplicative of Philp's mother's testimony, who testified Philp suffered from bronchitis and coughing and took Sudafed on her recommendation for the condition.

Second, there was overwhelming evidence supporting the conviction. *See Whitsel v. State*, 439 N.W.2d 871, 875 (Iowa 1989) ("Regardless of the appellant's many claims as to ineffective assistance of counsel, we find no prejudice to the appellant because the evidence presented at his trial was overwhelming concerning his guilt."). Some of the evidence supporting the conviction was discussed in this court's opinion resolving Philp's direct appeal:

> Contrary to Philp's contentions, the evidence shows much more than his presence and knowledge. Philp was shown to be purchasing pseudoephedrine at the same time and at the same location as other individuals tied to the Englebrecht property [the property at which methamphetamine was being manufactured], which indicated he was participating in a pill-gathering scheme. Most importantly, Onofrietti testified that he could smell ammonia in the barn while Philp and Randy Englebrecht were working in the corner of that barn behind the blue tarp. Onofrietti testified that the blue tarp covered a restricted area where he was not supposed to go. Onofrietti testified that Philp and Randy Englebrecht were the only two persons he saw behind the tarp, and "if one of them was behind there, usually both of them were behind there." When the barn was subsequently searched, a table, lighting, anhydrous ammonia, and other methamphetamine-manufacturing materials were all found behind the blue tarp.
> Further, Onofrietti overheard two conversations: one where Randy Englebrecht talked about "waiting for Mr. Philp to get off work" before he "whipp[ed] up a batch," and another where Englebrecht and Philp together discussed the need "to stock up" on anhydrous ammonia for the winter. Although Philp claims Onofrietti

was "a compromised witness," the credibility given to him was for the jury to determine.

*Philp*, 2010 WL 1578011, at *1. In addition to the testimony of Onofrietti, a witness who personally observed Philp engage in the manufacturing process, there was significant additional evidence of guilt, including, but not limited to, additional items consistent with manufacturing methamphetamine seized at the property in question, testimony Philp's driver's license identified as his residence the property where methamphetamine was being manufactured, and testimony regarding Philp's pseudoephedrine purchase history inconsistent with his alleged illness.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**