**IN THE COURT OF APPEALS OF IOWA**

No. 14-0813
Filed April 22, 2015

**DANIEL R. BOTHELL,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Johnson County, Ian K. Thornhill, Judge.

　　　　A postconviction relief applicant challenges his 2010 guilty plea to assault with intent to commit sexual abuse, contending plea counsel was ineffective incorrectly advising him as to the length of time he would be required to register as a sex offender.  **AFFIRMED.**

　　　　Mark C. Smith, Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, Janet Lyness, County Attorney, and Susan Nehring, Assistant County Attorney, for appellee State.

　　　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

Daniel Bothell challenges his 2010 guilty plea to assault with intent to commit sexual abuse, contending his plea was unknowing and involuntary because his plea counsel incorrectly advised him as to the length of time he would be required to register as a sex offender. The district court denied Bothell's application for postconviction relief, concluding Bothell could not prove his plea counsel was ineffective because the court found Bothell would not have refused to enter the plea and gone to trial even had he been accurately informed. On appeal, we accept the postconviction court's findings and affirm.

**I. Background Facts and Proceedings.**

The minutes of testimony in the underlying criminal case indicate that on November 9, 2009, Daniel Bothell was at a woman's house "chilling." The woman's boyfriend was also there. The three drank and played video games. Despite the fact that the woman knew Bothell to be homosexual and lived with his boyfriend, Bothell made numerous sexual advances to both the woman and her boyfriend throughout the night. The woman assumed Bothell was joking, but she told him to stop several times. Her boyfriend was also uncomfortable with Bothell's behavior.

At some point, the woman's boyfriend left to get pain medication. Once he left, Bothell attacked the woman, grabbing her and dragging her toward the back bedroom of her house and ripping her clothes. She told him he was hurting her and struggled to get away, but he began to hit her. After he dragged her to the bedroom, he bit her neck, and threw her onto the bed where he pinned her and punched her in the face. At this point he threatened to break her neck, stated he

was going to "get some pussy," and told her, "Bitch, you're going to get it just like [Bothell's boyfriend] did." The woman recognized the threat, as she was aware that the Bothell had previously assaulted his boyfriend by tearing his clothes off and beating him.

The woman kept knives throughout her house as a source of protection and was eventually able to grab one she had in the bedroom. She stabbed Bothell and ran naked to her neighbor's house. In the meantime, Bothell returned to his own home and his boyfriend called police to report the stabbing. Police located the woman at her neighbor's house, and pictures were taken of her injuries, which included bruises, scratches, and bite marks. Upon arrest, Bothell kicked and tried to trip one of the responding officers.

Bothell was charged with assault with intent to commit sex abuse causing bodily injury, a class "D" felony, in violation of Iowa Code section 709.11 (2009); first-degree harassment, an aggravated misdemeanor in violation of section 708.7(1)(b) and .7(2); false imprisonment, a serious misdemeanor in violation of section 710.7; and assault on a peace officer, a serious misdemeanor in violation of section 708.1(1) and 708.3A(4).

The parties reached a plea agreement in which Bothell would plead guilty to the lesser included offense of assault with intent to commit sexual abuse (without bodily injury), an aggravated misdemeanor in violation of Iowa Code section 709.11, and the other charges would be dismissed. The minimum fine and sentence would be suspended, and Bothell would be placed on probation for two years and required to attend required sex offender treatment. The guilty plea

also indicated that Bothell would be placed on the sex offender registry for ten years.

In Bothell's written plea of guilty, he provided a factual basis for his plea:

> I admit that on November 9, 2009, I punched and hit the victim in this case multiple times. I tore or ripped her clothes off. I admit that it was my intent to have sex with her against her will. By sex I mean that I wanted to have intercourse with her.

On April 30, 2010, the district court accepted Bothell's written guilty plea and he was sentenced in accordance with the plea agreement except as to the sex offender registry. The court did not expressly impose a ten-year registration requirement but instead ordered that Bothell shall register pursuant to Iowa Code section 692A.104. The Court also entered a separate order requiring Bothell to register in accordance with Iowa Code section 692A.101 and 692A.102, but did not specify the time limit for registration. Bothell did not file a direct appeal of his conviction and sentence.

In July 2010, Bothell received a letter from the Department of Criminal Investigation informing him that he was subject to lifetime sex offender registration. Bothell violated probation several times, including in July and August of 2010. His plea attorney, Quint Meyerdirk, represented Bothell during these proceedings.

On October 16, 2012, Bothell wrote a letter to the district court alleging that at the time he pled guilty he understood that he would be required to register for five years and requesting postconviction relief (PCR). On November 8, Bothell filed a PCR application. Counsel was appointed and Bothell filed an amended PCR application, alleging Bothell's plea attorney incorrectly informed

him that he would be placed on the sex offender registry for ten years and that the written plea reflected this representation. However, Bothell was required to register for life, rendering Bothell's plea in violation of the Sixth and Fourteenth Amendments to the United States Constitution, as well was Article I, section 10 of the Iowa Constitution.

On January 16, 2014, a hearing was held on Bothell's PCR application. Bothell testified his plea counsel informed him he was facing up to twenty-five years in prison and "that was definitely a factor in my decision for accepting the plea." He stated the plea agreement was that he would be required to be on the sex offender registry for ten years and he "thought that was acceptable." Bothell testified further that the registry issue—the ten years on the registry as stated in the written plea—"was my grand motivation for accepting the plea." Bothell testified:

> Q. So the issue of being on the registry was of concern to you in making your decision to accept the plea offer? A. I was not interested in a lifetime on the registry.
> Q. Is that a conversation that you had with Mr. Meyerdirk? A. I believe it was. Yeah.
> Q. Okay. A. Yeah.
> Q. But in your mind at least, a lifetime registry was not going to be an acceptable outcome? A. No. It wasn't.
> Q. And why is that? A. I would take it to trial rather than—rather than just accept a lifetime sentence on a plea.
> . . . .
> Q. Okay. So was it still your understanding—specifically focusing on the registry issue—that you were going to receive ten years on the registry as part of your guilty plea? A. Yeah.
> Q. Now, at some point after being sentenced, did you discover that the Department of Corrections did not view you as being someone that would be on the sexual abuse registry for ten years? A. Yes. I received a document in July of 2010 that stated

that this charge that I had pled guilty to had changed[1] and now carried a term of lifetime on the registry.

Bothell testified that upon receiving the letter, "I felt that a gross injustice had been done on my behalf, and I started to resist probation and I started to resist the terms of my probation and telling my probation officer this is not a lifetime, this is—it's a ten-year registry." Bothell repeated, he would have taken the matter to trial had he known of the lifetime registry requirement "[b]ecause I didn't believe I was guilty in the first place" and "a lifetime on the registry was a lot more than I was willing to take."

Bothell testified on cross examination that he had asked his plea counsel if the assault with intent charge could be "removed because I did not have the intent to sexually abuse this woman. And he kind of chuckled and said, no, that's the deal that they're offering, you can take it or take it to trial." The State's attorney asked Bothell why his original letter to the court mentioned a five-year registry requirement rather than the ten-year registry requirement Bothell was testifying he had agreed to. Bothell responded:

> That was stated after the—the signing of the document. He [Meyerdirk] stated this would be all resolved within five years and he said, Mr. Bothell, you could have won this in a trial without my assistance, followed by another chuckle. And there's a witness to that statement. [Bothell's then boyfriend]. That conversation took

---

[1] As of July 1, 2009, Iowa Code sections 692A.101(1)(a)(5) and 692A.106(5) required all persons convicted of assault with intent to commit sexual abuse (without Injury), in violation of Iowa Code Section 709.11, an aggravated misdemeanor, to register as a sex offender for life. Prior to July 1, 2009, a conviction for this same offense triggered a ten-year registration requirement. *See* Iowa Code § 692A.2(1) (2007). When the legislature increased the applicable registration period from ten-years to life, it made that increase effective retroactive for anyone who was otherwise required to register as a sex offender as of June 30, 2009. *See* Iowa Code § 692A.125(2)(a). In *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997), our supreme court concluded that "Iowa's sex offender registration statute, Iowa Code chapter 692A, is not punitive and therefore is not ex post facto."

place on the stairs of this courthouse. So in this—in this document that I wrote, I wrote something to the effect of only five years. That was after being further misled by Mr. Meyerdirk.

Bothell acknowledged that had he gone to trial and lost, he was facing a mandatory prison sentence. He was asked about prior convictions and whether plea counsel addressed possible "credibility problems" if he wanted to testify due to the type of felony convictions he had in his background. Bothell stated, "He just told me that he did not want to put me on the stand." He also acknowledged he was in jail before signing the plea agreement, he was "very eager" to get out of jail, and he was released within twenty-four hours of signing the agreement.

Bothell's plea counsel, Meyerdirk, testified he has been a public defender since 1993. Meyerdirk testified he would not have advised Bothell he was facing twenty-five years on the charged offenses because that was not accurate—a class "D" felony had a maximum term of five years. He also testified Bothell, had he gone to trial, ran a substantial risk of being found guilty of assault with intent to commit sexual abuse causing injury, as well as the other charges. Bothell's postconviction counsel and Meyerdirk had the following exchange:

> Q. All right. When you were typically talking to defendants in that period of time, 2009-2010, about sex offender registry requirements, is there anything that you were routinely advising people about in regard to the unique retroactive features of sex offender registry requirements? A. I did not recall specifically sitting down with Mr. Bothell or saying to him over the phone this is bad, this is what's going to happen, but I do it with every client. Any client that's got a sex offense pending or one that they're pleading to or so forth, I try to warn every one of them, don't believe—don't believe—don't believe anyone. There's no one that's going to run to your aid on this registry information. You're going to be on this thing for life. No Congressman, Congresswoman. No one is going to stick their necks out to help people that have been convicted of a sex crime. They're just not. . . .
>
> 　. . . .

> Q. And do you believe—Do you believe that you would have advised Mr. Bothell that he would have been subject to a lifetime sex offender registry? A. Yes.
>
> Q. Based on the nature of this offense? A. Yes. . . . And my answer was yes, but I don't think it's based on the nature of this offense. I think any sex crime, I think they're going to be on the registry for life. I just think that's the direction it's been going.
>
> . . . .
>
> Q. Do you feel that—that Mr.—or that you ever made any assertions to Mr. Bothell telling him that this sex offender registry thing is going to go away in five years because it's going to be too overloaded? A. With the registry?
>
> Q. Yes. A. No.
>
> Q . Do you think you would have ever told Mr. Bothell or any client charged with a sex offense that he could expect that the sex offender registry requirements would just go away in five years? A. No.
>
> Q. Does that—That doesn't sound like anything that you would have said? A. No. I wish they would, but no.

Meyerdirk testified, "I told him plan on being on it for life." He also testified he had represented Bothell since 1998 and was aware of his criminal history, which included impeachable felony offenses. He explained there were "problems" had they gone to trial, the "major problems was that most of what [the victim] said was corroborated with something physical." Meyerkirk testified further that the written guilty plea in this case was not the usual form, but rather, he had typed some of the paragraphs himself in "an attempt to protect [him]self":

> Mr. Bothell wanted out of jail. Mr. Bothell did not want me to take any more time, he did not want me to do anything. I probably overuse things like depositions. Mr. Bothell wanted out of jail. I was concerned, I guess, at the courthouse here when I was—the offer was—I knew what the State wanted. Instead of filling out the form, I wanted to make sure that we were—that he truly did not want to do depos, he truly wanted the case over.

When asked why the written plea agreement referred to a ten-year registry requirement, Meyerkirk testified:

It was my belief that [the prosecutor] was incorrect on the length of time. . . .

Q. So you testified that you were hoping the judge would order ten years' registry, correct? A. Follow the plea agreement. Yes.

. . . .

Q. So your testimony is you thought Mr. Bothell would get lifetime registry, but you signed a document, you allowed him to sign a document that said he would get ten years' registry? That is your testimony, isn't it? A. I expressed to him that I thought it was lifetime. I told him that no matter what the judge does, that's—no matter what the judge does in this case, this—this can come back and haunt you and new law changes can come back and haunt you.

On May 2, 2014, the district court issued its ruling, denying Bothell's PCR application. The court concluded that Bothell's attorney misinformed him of the length of the registration requirement and breached an essential duty. However, the court concluded that Bothell was not prejudiced by the breach because the court believed Bothell would still have taken the plea even if he had been correctly informed. Bothell appeals.

## II. Scope and Standard of Review.

Postconviction relief proceedings are civil actions reviewable for correction of errors at law. *Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009). To the extent Garcia raises constitutional questions, our review is de novo. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). We review constitutional issues de novo.

## III. Discussion.

"[A]ll postconviction relief applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011); *see also*

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "'We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking.'" *Lamasters*, 821 N.W.2d at 866 (citation omitted).

Here, the postconviction court found Bothell had failed to prove prejudice. The court made specific findings that Attorney Meyerdirk's testimony was credible, but Bothell's was not. The court wrote:

> The basis of his application and the focus of Applicant's testimony at trial in the instant matter is that the 10-year registration requirement was a major, if not the primary, factor in his decision to accept the State's plea offer and plead guilty to the aggravated misdemeanor of Assault with Intent to Commit Sexual Abuse without injury. Applicant testified he did not know a lifetime registration requirement was possible, even if applied retroactively, and that he would not have pled guilty but would have gone to trial if he had known he would be required to register as a sex offender for life by pleading guilty. The Court does not find Applicant's testimony to be credible. Although Applicant was incorrectly informed in the written guilty plea of the 10-year registration requirement, the Court finds, at a minimum, Applicant was advised by Attorney Meyerdirk of the possibility the registration laws would change and he could end up being required to register for life. This would have actually been the case had Applicant's guilty plea been entered and accepted prior to July 1, 2009. *See* Iowa Code section 692A.125. Therefore, Applicant was aware that a change in the law could change his registration requirements after his plea was accepted and he was sentenced. What Applicant was not made aware of is that such a change in the law had already taken place.
>
> Furthermore, the record and evidence supports the conclusion that the primary, if not singular, motivator for Applicant in taking the State's plea deal was the fact that he would avoid a mandatory prison term if convicted of the charged Class D forcible felony, be given probation on the aggravated misdemeanor conviction, and be immediately released from custody. This conclusion is supported by at least two significant facts. First, Applicant was released from jail without bond within a day of signing the written guilty plea after having served over two months in custody. Attorney Meyerdirk testified this condition was part of the arrangement with the State and was Applicant's primary concern at the time. Second, shortly after Applicant received the July 26, 2010, letter from the Iowa Department of Criminal Investigation advising him of the requirement he register as a sex

offender for life, Applicant was back in court on an alleged probation violation in this very same matter, represented by the very same attorney. However, Applicant did not raise the registration issue with his attorney or the Court at that time or at any other time prior to being discharged from probation on July 2, 2012.

We agree with the postconviction court's conclusion that Bothell has failed to prove he would have insisted on going to trial. We therefore affirm the denial of postconviction relief.

**AFFIRMED.**