# IN THE COURT OF APPEALS OF IOWA

No. 22-0431
Filed June 21, 2023


**MICHAEL ALLEN CASON JR.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


The applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**



John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Benjamin M. Parrott, Assistant Attorney

General, for appellee State.



Considered by Bower, C.J., Vaitheswaran, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**POTTERFIELD, Senior Judge.**

Michael Cason Jr. appeals the denial of his application for postconviction relief (PCR), following his 2017 conviction for first-degree murder. He argues the district court should have granted his application because he received ineffective assistance from trial counsel in a number of ways.

**I. Background Facts and Proceedings.**

Cason was charged with first-degree murder in the 2015 shooting death of Trenton Washington. He pled not guilty, and the case was tried to a jury over several days in January 2017.

In the direct appeal, we described how the evidence came in during trial as follows:

> The undisputed evidence established that Washington suffered a gunshot wound to his right thigh, which perforated his femoral artery, ultimately causing his death. At trial, Cason disputed that he was the person who fired the gun.
> . . . [F]our separate eyewitnesses identified Cason as the person who shot at Washington and his friend, Kazmond Meade, as they ran away. Each of the eyewitnesses was familiar with Cason before that night. . . . Additionally, all four had been spending time with Cason in the park immediately before the shooting occurred.
> The four eyewitnesses' testimony differed from each other in some respects—where Cason had obtained the gun, how many shots they heard fired, whether Cason chased after Washington and Meade before opening fire, and how long the group remained at the park after the shooting—but each linked Cason to the shooting. Meade testified he and Washington were in a physical scuffle with Cason, who then walked away and got a gun from one of his friends. Meade testified that as soon as he saw the gun, he and Washington ran away but Cason chased them and began firing. He believed he heard "about seventeen" shots. Jacorey James testified he saw Cason arguing with Meade and Washington in the park before Meade and Washington ran off with Cason chasing them. He admitted he "didn't" or "couldn't" see anything in Cason's hand when Cason gave chase but testified he then heard gunshots—"maybe three." Makayla Walls testified she was at the park when a fight broke out; she denied knowing everyone at the park or remembering

who was there but agreed Cason was involved in the fight. During direct examination, Walls testified as follows:

. . . .

Q. Did you see someone with a gun? A. Yes.

Q. Who had the gun? A. [Cason]

Q. Did you see Mr. Cason, . . . shoot the gun? A. Yes.

Q. Did you see who he was shooting at? A. No. But he was shooting—I didn't—no. I didn't see. He was just shooting in a straight direction.

Q. In the direction of Mr. Washington and his friend? A. Yeah. But I didn't see him shoot them.

Javon Washington testified that on the night in question, he saw Cason having a verbal argument with Trenton Washington and tried to intercede in order to diffuse the situation. Javon saw Cason pull out a gun and flash it around, causing Meade and Washington to take off. Cason then fired a pistol down Sampson Street, where Washington and Meade were running. Additionally, both Javon and Walls testified that the only person they saw fire a gun on the night in question was Cason.

State v. Cason, No. 17-0308, 2018 WL 1182613, at *1–2 (Iowa Ct. App. Mar. 7, 2018) (footnotes omitted). The jury convicted Cason as charged, and he was later sentenced to life in prison.

Cason appealed his conviction, arguing his motion for new trial should have been granted because the greater weight of the credible evidence did not support the verdict and that he received ineffective assistance from his trial counsel. A panel of this court concluded the district court did not abuse its discretion in denying the motion for new trial. See id. at *2. We preserved Cason's claims of ineffective assistance for further development of the record in a PCR action and affirmed. Id. at *3.

Cason initiated this PCR action shortly after. He alleged his trial counsel breached an essential duty, which prejudiced him, when counsel failed to (1) object to the admission of an inoperable gun that was not used in the shooting death, (2) obtain an expert on eyewitness testimony, (3) request inclusion of the model

jury instruction on eyewitness testimony, (4) properly impeach witnesses with their prior deposition testimony, and (5) argue there was no gunshot residue found on Cason and the police did not conduct a proper investigation because they failed to check others who were present at the time of the shooting for gunshot residue.

Following an evidentiary hearing, where Cason and one of his trial counsel testified,[1] the district court denied the PCR application, concluding Cason "failed to prove his trial counsel's performance fell below professional standards. Even presuming error, there is not a reasonable probability that absent such error the result of the proceeding would have been different."

Cason appeals.

**II. Discussion.**

As he did to the district court, Cason claims he received ineffective assistance from trial counsel. While we generally review PCR proceedings for legal error, "when the applicant alleges constitutional error, review is de novo 'in light of the totality of the circumstances and the record upon which the postconviction court's rulings was made.'" *Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009) (citation omitted).

"[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011). "We start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Lamasters v. State*, 821 N.W.2d 856, 866

---

[1] Cason was represented by two attorneys, working as co-counsel, throughout his trial.

(Iowa 2012).  "Even if [the applicant] can show his counsel made a professionally unreasonable error, the judgment shall not be set aside unless it can be shown the error had an effect on the judgment."  *Id.*  "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Id.* (citation omitted).

**A. Admission of Inoperable Gun.**

At the underlying criminal trial, the State introduced into evidence a gun that a police officer found underneath a bush about thirty yards from where Cason and five or six others were stopped as they left the area where Washington was shot. An officer seemed to tie Cason to the discarded weapon through his testimony, pointing out that when he came upon the group, the pocket of the gym shorts Cason was wearing under his cargo shorts was hanging out—"a clear indication to [the officer] that [Cason] probably pulled something from that pocket in haste in an effort probably to get rid of it prior to making contact with us."  Testing of the gun before trial showed that it was inoperable, and the jury was told the firearm did not work and was not the gun used in the shooting of Washington.  The gun that was actually used in the shooting was never recovered.

In the PCR action, Cason claimed trial counsel provided ineffective assistance by failing to object to the admission of the inoperable gun as irrelevant and because its probative value was substantially outweighed by the danger of unfair prejudice.  *See* Iowa Rs. Evid. 5.401, 5.403.  He maintained he was prejudiced by the admission of the inoperable gun because it made him "look like a bad person or a person that's capable of being around weapons."

At the PCR trial, Cason's trial counsel testified that he, his co-counsel, and Cason all thought that letting the jury know about the inoperable gun was "a positive" for Cason. He remembered Cason "being very insistent that that gun should be introduced because it undermined the State's case." And the trial attorney agreed "because the police jumped on that so quickly as the weapon used, that it was going to be beneficial to our argument."

The decision not to object to the admission of the inoperable gun—which the police wrongly focused on as the murder weapon almost immediately—was a reasonable strategy. There was no physical evidence linking Cason to the murder, and raising questions about the quality of the police investigation was a practical way to suggest the prosecution may have settled on the wrong person. "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Lamasters*, 821 N.W.2d at 866 (citation omitted). Cason has not shown trial counsel breached an essential duty.

**B. Lack of Expert on Eyewitness Testimony.**

Next, Cason claims trial counsel provided ineffective assistance by failing to obtain an expert on eyewitness testimony to testify at trial. At the PCR trial, Cason testified:

> An expert would be able to explain not only the lighting, they would be able to explain the distance and how a lot of things were— The lighting alone would give a good description of how a person wouldn't be able to see in a chaotic situation. I believe an expert would have been able to break down the fact that in a chaotic situation, with it being dark outside and with poor lighting, your vision would be—what's the word—tainted, I believe is the word.

He claimed he was prejudiced by the lack of expert because if the four eyewitness identifications were "shown to be less than credible" then the jury would not have convicted him.

The problem is that Cason's argument is entirely speculative; he has not yet produced an expert to testify how he posits an expert would have testified at trial. *See Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984) (considering a claim of ineffective assistance based on the idea counsel should have called other witnesses and evaluating whether the applicant "has adequately shown the nature of the testimony that the[] witnesses would have given"); *Luke v. State*, 465 N.W.2d 898, 902 (Iowa Ct. App. 1990) ("[The applicant] does not present evidence the witnesses would have, in fact, testified in this manner. . . . [W]e are not persuaded by [his] speculation."). Cason has not established trial counsel breached an essential duty.

**C. Jury Instruction on Eyewitness Testimony.**

Cason claimed trial counsel provided ineffective assistance by failing to request the inclusion of model instruction 200.45 in the jury instructions. The instruction lays out factors for the jury to consider when deciding on the value of an eyewitness identification; it states:

> 1. If the witness had an adequate opportunity to see the person at the time of the crime. You may consider such matters as the length of time the witness had to observe the person, the conditions at that time in terms of visibility and distance, and whether the witness had known or seen the person in the past.
> 2. If an identification was made after the crime, you shall consider whether it was the result of the witness's own recollection. You may consider the way in which the defendant was presented to the witness for identification, and the length of time that passed between the crime and the witness's next opportunity to see the defendant.

3. Any identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

4. Any occasion in which the witness failed to identify the defendant or made an inconsistent identification.

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.45 (2015). Cason does not explain how he was prejudiced, but the implication is that if the jury was given this instruction, it would have discounted the testimony of the four eyewitnesses who named him as the shooter at trial and acquitted.

Like the district court, we do not think the model instruction is the boon Cason paints it to be. While Cason suggests the model instruction could only have helped him, we think it also cuts against his argument that the eyewitnesses' identification should be discounted. True, it was around 9:00 p.m. on a September night, and all of the witnesses agreed it was dark outside. But all four eyewitnesses were familiar with Cason before the night of the shooting, and they were spending time together at the park—weighing in favor of their identifications. There was also little testimony about identifications in a visual sense—four witnesses named Cason as the shooter to police, but there was only testimony about an impromptu lineup in front of Meade on the night of the shooting (during which he did not name or pick Cason) and then, later, Meade and James separately picking Cason out of a photo lineup with police.

"[B]ecause the instruction would have hurt as much as it helped, it was not a breach of duty for [Cason's] counsel not to request it." *State v. Shorter*, 893 N.W.2d 65, 86 (Iowa 2017). This claim of ineffective assistance fails.

**D. Impeaching of Eyewitnesses.**

Cason argues trial counsel failed to "improperly impeach witnesses with their prior deposition testimony." At the PCR trial, he testified that if counsel had done so,

> then I believe it would have showed how they're not credible; and, also, it would have changed the outcome of the case because the only thing tying me to this case and I believe the only thing that has got me convicted in this case is the jury must have believed the witnesses.
>
> If my trial counsel would have proved the inconsistencies, uncredible, how their stories kept changing— Once they would have proved that with each of these witnesses, it would have changed the whole outcome because now the jury looks at these witnesses differently.

As the district court did, we note that trial counsel cross-examined each of the three witnesses Cason claimed should have been impeached (Meade, Walls, and James). Through cross-examination, Cason's attorney emphasized that during his first interview with police, Meade admitted "that when [he] went to the police station, [he] didn't tell the truth." He also elicited testimony about how dark it was in the park and the surrounding area at the time of the incident. With James, Cason's attorney impeached him with his prior deposition testimony—taken just a few days before trial—that James did not believe Cason was involved in a fight involving Meade and Washington. He also emphasized James's statement that, after Meade and Washington took off running, he heard three shots (sixteen shells were recovered). And finally, the following exchange occurred with Walls on cross-examination by Cason's attorney:

> Q. Did you tell the police the same story that night [of the shooting] as you told us here today? A. No.
> Q. Wouldn't it be true that you told them you didn't know anything about this thing? A. Yeah.

. . . .

Q. Ms. Walls, back on August 3rd, do you remember us taking your deposition? A. Yes.

Q. And do you recall whether or not you told us that day if you saw anybody else with a gun? A. No. I don't remember.

Q. You don't remember saying that this person named Bitty had the gun? A. No. I don't remember. I don't remember anything that I said. I don't remember anything.

Q. Do you remember when I asked you if you recall anything specifically about that night? A. No. I'm sorry. I honestly don't remember anything from the deposition. I don't remember anything from that night. I really don't remember anything from that night.

. . . .

Q. So when I asked you specifically if you remember anything about that night, you said you didn't know? A. Yeah.

Here on appeal, Cason does not offer specific arguments about how else counsel should have impeached or questioned the witnesses. And we do not have the witnesses' depositions as part of our record so, even if we wanted to, we could not comb them for further inconsistencies. Without more, we cannot say counsel did not perform competently. *See Luke v. State*, 465 N.W.2d 898, 902–03 (Iowa 1990) (rejecting defendant's ineffective-assistance claim that counsel failed to "'aggressively' cross-examine" and concluding "counsel's performance was quite competent" where counsel pointed out numerous inconsistencies in witness's testimony and pointed out weaknesses in the witness's credibility). Generalized assertions that counsel should have done more or done better are not enough to establish ineffective assistance. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

**E. Question of Gun Shot Residue.**

Finally, Cason argues trial counsel provided ineffective assistance by "[f]ailing to argue there was no gunshot residue and that the police did not conduct a proper investigation." We are not sure we understand this claim. Cason

repeatedly asserts that no gunshot residue was found on him—a "fact" he suggests shows he was not the person who fired the gun. But no gunshot residue testing was ever completed. So, we cannot say that counsel should have argued this fact that has never been established.

In another vein, we believe Cason may be arguing that if the police had conducted a proper investigation, they would have tested each person who was in the park at the time of the shooting for gunshot residue. He suggested that he would have turned up without residue, while the "real shooter" would have been identified. But even if gunshot residue testing is absolute and works exactly as Cason posited in his PCR testimony,[2] the fact is that this testing never happened. And it is unclear to us—and Cason does not make the connection—how effective trial representation could have changed this lack of testing after the fact.

Cason has not shown that he received constitutionally deficient representation. This claim also fails.

## III. Conclusion.

Cason did not establish any of his claims of ineffective assistance of trial counsel; we affirm the denial of his PCR application.

**AFFIRMED.**

---

[2] Cason testified:

> [I]f they do the proper investigation and they test everybody's hands and clothes, things of that nature, then we wouldn't—we wouldn't be having an argument that we're having nor discussion because I believe with the—with the gunshot residue test and also if you test somebody's clothes once you detain a person from where you say a shooting was at, then that right there is going to tell you pretty much who fired the gun. And without that testing and without properly doing that part of the investigation and without that test, then there's really no way to tell.