# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 09-2850

_____

John Leslie Nicholas Graves,

          Appellant,

     v.

John Ault, Warden Iowa State
Penitentiary,

          Appellee.

Appeal from the United States
District Court for the
Southern District of Iowa.

[PUBLISHED]

_____

Submitted: April 13, 2010
Filed: July 29, 2010

_____

Before LOKEN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

John Graves was convicted of first degree murder in January 2001. His conviction was affirmed by the Iowa Court of Appeals. He was later denied postconviction relief, and that decision was also affirmed by the Iowa Court of Appeals. Graves then petitioned for a writ of habeas corpus in federal district court, arguing that his counsel was ineffective for (1) failing to obtain a toxicology expert to test and explicate the results of a blood sample Graves submitted hours after the murder, (2) failing to object to prosecutorial misconduct that occurred during the

State's closing argument, (3) failing to preserve error on an unlawful felony-murder jury instruction, and (4) failing to present a blood-spatter expert at trial. The district court[1] denied the writ, and Graves appealed. We affirm.

I.

Graves was released early from work on July 15, 2000. Once home, Graves drank most of a bottle of red wine. He then went to a bar where he drank more. Later, in the early morning hours of July 16, two police officers observed Graves at a convenience store with a known prostitute, Darlene Avant. Graves purchased food for himself and Avant at the convenience store, and he also made cash withdrawals from automated teller machines that night.

Avant accompanied Graves to his home. The two began to engage in sexual activity until Graves, who had a girlfriend at the time, was stricken with remorse. Graves contends that when he asked Avant to leave, she lunged at him with a knife. He acknowledges that she was naked and seated on the floor at that time. In self-defense, he claims, Graves struck her in the head with a dumbbell. After striking Avant in the head multiple times, Graves believed she could not breathe. He took the knife Avant employed in her alleged attack and he used it to cut a hole in her throat—ostensibly attempting an emergency tracheotomy. The knife wound was 2½ inches deep; it missed Avant's trachea, cut her jugular vein, and impacted her vertebra.

Graves then loaded Avant's naked body into the trunk of his car, drove to a relatively secluded location, and discarded the body near the road. At some point, he also tried to use bleach to remove Avant's blood from the carpet in his home. When

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Graves' girlfriend inquired about the stains on the carpet later that day, he told her he had spilled red wine.

Later on July 16, passersby found Avant's naked body where Graves had discarded it. Graves was questioned by police the same day, and he initially denied knowing Avant. Later, Graves admitted to meeting Avant and causing her death.

Graves was charged with first degree murder. He asserted defenses of justification and diminished capacity due to alcohol intoxication. At trial, defense counsel marshaled evidence of Graves' intoxication on the night of the murder, but did not introduce scientific evidence of Graves' blood alcohol content. The court provided the jury with a general verdict form, allowing the jury to convict Graves of first degree murder on either of two theories. The instruction allowed the jury to convict Graves if he (a) willfully, deliberately, and with premeditation killed Avant or (b) caused Avant's death while participating in the forcible felony of willful injury. The jury found Graves guilty of murder in the first degree, and the district court sentenced Graves to a mandatory term of life in prison.

Graves appealed. Along with other arguments, Graves contended that his trial counsel was ineffective for failing to call an expert to testify regarding Graves' blood alcohol level following his arrest. The Iowa Court of Appeals affirmed the conviction, and the Supreme Court of Iowa denied further review.

Subsequently, Graves filed an application for postconviction relief in Iowa district court. In support of his claim for postconviction relief, Graves argued that his trial counsel was ineffective by, *inter alia*, failing to object to prosecutorial misconduct that occurred during closing argument when the prosecutor referred to Graves as having lied at trial. Graves also asserted that his counsel on direct appeal was ineffective for the same reasons. The postconviction trial court rejected Graves' claims, and Graves appealed. Of the claims argued to the postconviction trial court,

-3-

Graves pursued only the prosecutorial-misconduct-based claim on appeal. In addition, Graves asserted for the first time that his counsel at trial, direct appeal, and postconviction relief proceedings were each ineffective for failing to object to parts of the State's closing argument. The Iowa Court of Appeals affirmed the state district court's denial of postconviction relief. The Supreme Court of Iowa denied further review.

Graves filed a petition for a writ of habeas corpus. He argued that his trial counsel was ineffective when counsel failed (1) to object to prosecutorial misconduct that occurred during closing argument when the prosecutor referred to Graves as having lied, (2) to object to the felony-murder instruction using willful injury as the predicate felony, (3) to present an intoxication defense at trial, and (4) to present a blood-spatter expert at trial.

Before resolution of the petition for a writ of habeas corpus, Graves moved the federal district court to provide for expert witness fees and to allow an evidentiary hearing. He requested fees for toxicology and blood spatter experts. The district court denied both requests. The court held that an intoxication expert would not have changed the outcome of the trial. The court also held that the claim based on the failure to obtain a blood spatter expert was procedurally defaulted.

After a hearing on the petition, the district court rejected each of Graves' claims of ineffective assistance of counsel. Graves appeals to this court.

II.

"'In an appeal of a habeas application, we review the district court's findings of fact for clear error and its conclusions of law *de novo*.'" Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir. 2007) (alteration omitted) (quoting Engessen v. Dooley, 457 F.3d 731, 735 (8th Cir. 2006), cert. denied, 549 U.S. 1223 (2007)).

## III.

Graves argues that the Iowa Court of Appeals' rejection of his direct appeal was based upon an unreasonable determination of a material fact, entitling him to relief under 28 U.S.C. § 2254(d)(2). Specifically, Graves points out that the Iowa Court of Appeals rejected his claim that trial counsel was ineffective for failing to have an expert test and explicate the results of blood samples taken hours after the murder, based on the court's mistaken belief that a state criminalist had testified "that Graves had alcohol in his system totaling .333 grams per milliliter." Iowa v. Graves, No. 01-0269, 2002 WL 987844, *2 (Iowa Ct. App. May 15, 2002). Graves also continues to argue that he should be allowed to acquire and introduce expert testimony supporting his intoxication defense. The State argues that the first argument is procedurally barred and the second is meritless. We agree.

The authority of federal courts to entertain an application for a writ of habeas corpus on behalf of a person in state custody is limited by 28 U.S.C. § 2254. One limitation currently codified in § 2254 prescribes that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).

Graves did not give the state courts an opportunity to review his claim that the Iowa Court of Appeals' decision was based upon an unreasonable determination of the facts in violation of § 2254(d)(2). On direct appeal, he argued that his trial counsel was ineffective in failing to retain an expert to test a sample of blood taken hours after the murder. In the course of rejecting Graves' argument, the appellate court made the

statement about Graves' blood alcohol content. Graves subsequently applied to the Iowa Supreme Court for further (discretionary) review of the Iowa Court of Appeals' decision but did not mention his counsel's performance with respect to his diminished capacity defense—clearly failing to take issue with the blood alcohol content statement. Subsequently, Graves applied for postconviction relief but again failed to take issue with the Iowa Court of Appeals' statement regarding his blood alcohol content. Similarly, Graves again overlooked the issue on appeal of the denial of postconviction relief. Plainly, the Iowa state courts did not have a fair opportunity to review the claim centered on the Iowa Court of Appeals' factual statement regarding Graves' blood alcohol content.[2] Consequently, Graves is barred from bringing the claim in this court.

Graves also continues to argue that he should be allowed to acquire and introduce expert testimony supporting his intoxication defense. Graves raised arguably comparable issues in Iowa state court, arguing that his trial counsel was ineffective for failing to test blood samples allegedly taken from him hours after the murder and for failing to retain an expert to explicate the results of any such test. We assume, without deciding, that his requests to develop expert testimony are sufficient to advance that ineffective assistance of counsel claim in this court, but we conclude that the state court adjudication of that issue is not contrary to clearly established federal law.

---

[2]This conclusion is reinforced by the procedural fact that Graves did not even mention such a claim in his federal petition for writ of habeas corpus. To the contrary, Graves requested expert witness fees and an evidentiary hearing, and he cited and *relied upon* the Iowa Court of Appeals' statement regarding his blood alcohol content in support of those requests. Graves did not highlight the Iowa Court of Appeals' obvious factual mistake, nor did he mention 28 U.S.C. § 2254(d)(2) until his federal trial brief—after the federal district court had already rejected his requests to retain an expert and for an evidentiary hearing.

As is well-established, to prevail on an ineffective assistance of counsel claim, Graves must establish that his counsel failed to perform an essential duty and that the failure prejudiced Graves. Strickland v. Washington, 466 U.S. 668, 694 (1984). To demonstrate prejudice, Graves must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Considering the other evidence presented to the jury, we see no reasonable probability that the result would have been different had trial counsel secured an expert to test the blood and opine on the results.

Graves testified that he drank most of a bottle of wine between approximately 8:00 p.m. and 10:00 p.m. and then drank an estimated eight beers and three shots of whisky at the bar before it closed at 2:00 a.m. Multiple eyewitnesses, including two police officers and the bartender, testified to Graves' demeanor in the early morning hours. The jury heard Graves testify about the night in question, and they witnessed his ability to remember certain details of the evening along with his inability to recall other details.

The record is unclear as to when authorities obtained the blood sample that Graves argues should have been independently tested. Nonetheless, the sample could not have been drawn until after noon on the day following the night of Avant's death. Thus, at best, any expert would be testifying about the hypothetical effects of Graves' estimated blood alcohol level. In the face of the record evidence, there is no reasonable probability that the result of Graves' trial would have been different had counsel proffered the requested expert testimony.[3]

---

[3]Graves did not address the blood spatter issue in his brief to this court, so we deem that issue to be abandoned. Weaver v. Bowersox, 438 F.3d 832, 838 (8th Cir. 2006) (deeming a claim not argued in appellate brief to be abandoned).

IV.

Graves also argues that his counsel provided ineffective assistance when counsel failed to object to prosecutorial misconduct that Graves believes occurred during closing arguments. Graves argues that the prosecution made four improper statements during closing arguments: (1) "Now, [defense counsel] is going to say it is too embarrassing to call the police when you've got a prostitute in your house. Ladies and gentlemen, that's so weak." (Trial Tr. Vol. IV at 550.) (2) "Ladies and gentlemen, consider what he does after he kills her. Everything he does is an attempt to cover up. He cleans up so that he doesn't get caught. . . . He lies to his girlfriend. He lies to the police. And I submit he lies to you, ladies and gentlemen." (Trial Tr. Vol. IV at 554.) (3) "You know, ladies and gentlemen, and I'm going to tell you right now, you can't believe a word this defendants [sic] says. He's a convicted felon, and he's got an interest in this case." (Trial Tr. Vol. IV at 570.) (4) "He comes home and cleans up, tries to clean up the blood, lies about it, does all those things. And do you think he is going to come in here and tell you the truth? No. He didn't tell you the truth." (Trial Tr. Vol. IV at 578.)

Graves first complained of these statements in his postconviction relief proceedings. The state postconviction relief district court held that two of the statements were improper, but that the statements were not so prejudicial that Graves was denied a fair trial. The postconviction appellate court agreed. Graves then filed his federal petition for a writ of habeas corpus which generates this appeal. The federal district court held that the record did not show sufficient prejudice to establish a claim of prosecutorial misconduct under federal law.

We lack authority to grant the writ based on a reexamination of the Iowa Court of Appeals' determination that no prosecutorial misconduct occurred under state law.[4] 28 U.S.C. § 2254(d)(1); Middleton v. Roper, 455 F.3d 838, 852 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007). Consequently, trial counsel could not have been ineffective for failing to raise a state law claim with no merit, see Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994) (holding claim of ineffective assistance of counsel fails when underlying claim "rejected as meritless"), and our analysis is limited to a resolution of whether trial counsel was ineffective in failing to raise a prosecutorial misconduct claim based on federal constitutional law.

"[A] two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001). Even if one or more of the comments was improper, reversal "is appropriate only when we determine that the jury verdict reasonably could have been affected by the improper comment." United States v. Peyro, 786 F.2d 826, 831 (8th Cir. 1986). Thus, if Graves cannot show the comments deprived him of a fair trial, we need not decide whether they were improper.[5] We have looked to three

---

[4]The Iowa Court of Appeals held that Graves' prosecutorial misconduct claim failed to satisfy the Iowa courts' test for prosecutorial misconduct. That test requires "proof the misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial." Graves v. State, 668 N.W.2d 860, 869 (Iowa 2003). The Iowa Court of Appeals held that no such prejudice existed.

[5]While we need not, and do not, decide whether the comments were improper, we observe that most of the prosecutor's comments were made in the context of reviewing the evidence. See United States v. Littrell, 439 F.3d 875, 882-83 (8th Cir.) (holding facially improper comments nonetheless proper because made as part of a review of the evidence, demonstrating that the comment did not amount to personal vouching by the prosecutor), cert. denied, 549 U.S. 939 (2006). Of the four comments, the only statement obviously lacking redeeming context and record support

factors to determine whether prosecutorial misconduct deprived the defendant of a fair trial. United States v. Beeks, 224 F.3d 741, 745 (8th Cir. 2000). "First, we consider the cumulative effect of the misconduct. Second, we examine the strength of the properly admitted evidence of the defendant's guilt. Last, we review the curative actions taken by the district court." Id.

The cumulative effect of the alleged misconduct could not have been great. First, defense counsel had himself pointed out in his opening statement that Graves lied in an attempt to conceal his role in Avant's death. Additionally, before closing arguments, the evidence at trial had already destroyed Graves' credibility. The evidence showed that Graves initially told police that he did not know about Avant's death, then changed his story. The jury also already knew that Graves falsely told his girlfriend that he spilled red wine on the carpet. And Graves' testimony regarding how many times he struck Avant with the dumbbell was directly contradicted by a government evidence technician and demonstrative evidence addressing blood spatter. Finally, there are only four challenged statements, and each took place during closing arguments. Thus, there was no improper prosecutorial theme pervading the entire trial. See Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (noting particular importance of considering the frequency and pervasiveness of improper comments).

The cumulative effect of any misconduct is also outweighed by the strength of the properly admitted evidence of Graves' guilt. Graves admitted that he caused Avant's death, and his defense focused on theories of diminished capacity and justification. Graves' principal argument that the prosecutorial misconduct prejudiced

---

is the third: "I'm going to tell you right now, you can't believe a word this defendant[] says." (Trial Tr. Vol. IV at 570.) Certainly, the prosecutor believed Graves' admissions that he killed Avant and discarded her body, and he wanted the jury to believe those admissions. The record supports the admissions. Thus, to say Graves did not speak one word of truth is, technically, not a reasonable inference from the record.

his defense is that the success of his defenses turned on the jury's favorable evaluation of his credibility, and the misconduct was directly aimed at destroying that credibility. With regard to Graves' diminished capacity defense (and inversely, with regard to proof of Graves' specific intent to assault and murder Avant), numerous witnesses testified as to what alcoholic beverages Graves consumed and his resulting demeanor. Those witnesses included two police officers and a bartender. Graves was able to drive, engage in commercial transactions, and operate an ATM. He also chose right over wrong when he ended the sexual encounter with Avant due to feelings of guilt. Finally, the nature of the weapons and the "'reckless character and manner of the assault'" suggested his intent. See United States v. Warbonnet, 750 F.2d 698, 700 (8th Cir. 1984) (quoting People v. Nickolopoulos, 185 N.E.2d 209, 210 (1962)).

The evidence likewise strongly discounted Graves' justification defense. Avant was naked and seated on the floor when she was repeatedly struck in the head with a dumbbell, an unlikely time for the smaller woman to attempt to stab Graves with a knife. Avant also suffered a two-and-one-half inch stab wound to her neck. While Graves contends it was his attempt at an emergency medical procedure he had seen on television, the incision sliced through Avant's jugular vein and impacted her vertebra. Additionally, Graves failed to act as someone with an honest belief that he had previously acted in self defense—he removed Avant's body and disposed of the body in a ditch along with other evidence of the killing, he attempted to clean up his house, he never called police, and then he lied about the killing. See United States v. Littlewind, 595 F.3d 876, 883 (8th Cir. 2010) (holding attempt to dispose of gun in nearby wetland probative of guilt); United States v. Kuehne, 547 F.3d 667, 691-92 (6th Cir. 2008) (holding "attempt to tamper with evidence is probative of guilt"), cert. denied, 130 S. Ct. 342 (2009); State v. Thornton, 498 N.W.2d 670, 673-74 (Iowa 1993) (holding that a jury could rationally believe that fleeing from crime scene and not reporting incident to police are "not the actions of someone who honestly believed he acted in self-defense").

Finally, the jury was instructed that closing arguments are not evidence and that its verdict must be based on the evidence. See Littrell, 439 F.3d at 883 (noting that "[t]he district court also instructed the jury that closing arguments are just that, argument, and are not evidence of anything," in support of a holding that improper prosecutorial comments in closing did not justify new trial). Based on the foregoing, we hold the jury verdict could not have been affected by the allegedly improper comments and Graves was not deprived of a fair trial. Thus, defense counsel did not fail to object to a valid claim of prosecutorial misconduct under federal law and counsel did not render ineffective assistance of counsel for failing to object.[6]

V.

Finally, Graves contends that due process requires that he benefit from the Supreme Court of Iowa's decision in State v. Heemstra, 721 N.W.2d 549 (Iowa 2006). Heemstra, filed after Graves' direct appeal process was complete, held that an assault causing willful injury cannot serve as the predicate felony for felony-murder purposes "if the act causing willful injury is the same act that causes the victim's death." 721 N.W.2d at 558. A jury found Graves guilty of first degree murder on a general verdict form that included premeditated murder and felony murder as alternative grounds, and Graves contends that Heemstra should apply to his case to require merger of the act constituting the willful-injury predicate felony and the act causing Avant's death.

In the procedural context of this case, Graves claims that the Iowa Court of Appeals unreasonably applied established United States Supreme Court precedent

---

[6]While we have refrained from determining the propriety *vel non* of the prosecutor's statements, we have serious doubt that when the evidence clearly shows that a defendant has admittedly lied about his involvement in the crime, that it is prosecutorial misconduct to point out in argument that the defendant did so and to ask the jury to consider whether such dissembling also occurred during the defendant's courtroom testimony.

when it affirmed the rejection of Graves' application for postconviction relief, holding that due process did not mandate application of Heemstra to his collateral attack. In that state postconviction appeal, Graves posited that Teague v. Lane, 489 U.S. 288 (1989), required the Iowa Court of Appeals to apply Heemstra to his collateral attack. The Iowa Court of Appeals held that Teague is inapposite to Graves' case, Graves v. State, No. 06-0369, 2007 WL 1484512, *3 (Iowa Ct. App. May 23, 2007), and Graves has not relied upon Teague in this court.[7] Instead, Graves now relies on Fiore v. White, 531 U.S. 225 (2001), and Bunkley v. Florida, 538 U.S. 835 (2003).

The State argues that Graves has not presented a due process claim based on Fiore and Bunkley to a state court and that his claim is consequently procedurally barred. In the alternative, the State argues that federal due process does not require a subsequent court to apply Heemstra to a collateral attack. Although we doubt that Graves fairly presented this issue to the state courts,[8] we will address Graves' reliance on Fiore and Bunkley because it is plain to us that the due process claim he presses lacks merit.

---

[7]Teague addressed the retroactive effect of new rules of criminal procedure dictated by the court's interpretation of the Constitution. See Teague, 489 U.S. at 299-305. Heemstra interpreted the substantive elements of a state statute and thus prescribed neither a new rule of criminal procedure nor a rule dictated by the Constitution. See Goosman v. State, 764 N.W.2d 539, 542 (Iowa 2009) (applying "[f]ederal precedent concerning the application of substantive law in collateral proceedings"). As such, Teague would not control the application of Heemstra to the facts of this case, even if Graves did continue to urge it in this court.

[8]Graves did not cite Fiore or Bunkley during his Iowa postconviction relief proceedings, nor did he argue that he was convicted of that which is not a crime or without proof beyond a reasonable doubt of each of element of that which is a crime. Instead, he merely argued that due process requires that Heemstra be applied retroactively on his collateral attack. By its own terms, Fiore "presents no issue of retroactivity." 531 U.S. at 228.

-13-

Fiore addressed the constitutionality of a conviction for violating a state statute prohibiting the operation of a waste facility without a permit. 531 U.S. at 226. Although Fiore actually possessed a permit, the prosecution succeeded in securing a conviction by arguing that his activities exceeded the scope of the permit. Id. at 227. After Fiore's conviction was final, the state supreme court reviewed the conviction of Fiore's codefendant and held that the applicable statute did not criminalize deviation from a permit. Id. Based on that decision, Fiore collaterally challenged his conviction in state court. Id. His state challenges were denied, and he filed a federal petition for a writ of habeas corpus. Id. The district court granted the writ, the circuit court reversed, and the Supreme Court granted certiorari. Id. at 227-28.

In order to resolve the case, the United States Supreme Court certified a question to the Pennsylvania state supreme court. Id. at 228. It asked whether the state court's decision in Fiore's codefendant's case, interpreting the applicable statute, was a new interpretation of the law or was "the correct interpretation of the law . . . at the date Fiore's conviction became final." Id. The state court answered that its ruling merely furnished a proper statement of the law at the time Fiore was convicted. Id. Based on that answer, the Supreme Court held that Fiore's conviction violated federal due process because Fiore was convicted of a crime without proof beyond a reasonable doubt of each element of that crime. Id. at 228-29. The statute required a failure to possess a permit; Fiore possessed such a permit, so the state could not have not proved a required element of the crime beyond a reasonable doubt. Id. at 229.

In Bunkley, the defendant challenged his conviction and relied on Fiore. Bunkley, 538 U.S. at 836. Bunkley burglarized a restaurant while possessing a knife with a blade no longer than three inches. Id. Bunkley was convicted in state court of burglary in the first degree, under a state statute providing increased penalties for burglary while armed with a dangerous weapon. Id. at 836-37. The statutory definition of dangerous weapon, however, specifically exempted the "common pocketknife." Id. at 837. In a subsequent unrelated case, the state supreme court held

-14-

that a pocketknife with a blade of 3.75 inches fell within the common pocketknife exception.  Id.  Bunkley challenged his previous conviction collaterally in state court, and he cited the new case law.  Id. at 838.  In the collateral proceedings, the state supreme court held that its previous case was merely an "evolutionary refinement," and so did not demand retroactive application according to the federal due process dictates expounded in Fiore.  Id.  Bunkley then petitioned for a writ of habeas corpus, which the Supreme Court eventually considered on certiorari.  Id. at 836.  The United States Supreme Court held that, ordinarily, the state supreme court's holding that an intervening case "constitutes a change in—rather than a clarification of—the law would be sufficient to dispose of the Fiore question," because "[b]y holding that a change in the law occurred, the [state supreme court] would thereby likewise have signaled that the common pocketknife exception was narrower at the time Bunkley was convicted."  Id. at 841.  The United States Supreme Court held that the Fiore question was not answered, however, because the state supreme court had held that the common pocketknife exception was undergoing an evolutionary process through decisional law during the relevant time period.  Id. at 842. Consequently, the United States Supreme Court remanded the case to the state supreme court for a determination of what the law was at the exact time of Bunkley's conviction (i.e., to pinpoint where the pocketknife exception was in its "evolutionary process" at the time of Bunkley's conviction).  Id.  Only by knowing what the law was at the time of Bunkley's conviction could the Supreme Court answer the Fiore question of whether he was convicted with proof beyond a reasonable doubt of each element of the crime.

Neither Fiore nor Bunkley requires application of Heemstra to Graves' collateral attack.  In Fiore the United States Supreme Court explicitly stated: "[T]his case presents no issue of retroactivity."  531 U.S. at 228.  "Rather, the question [was] simply whether [a state] can, consistently with the Federal Due Process Clause, convict [a defendant] for conduct that its criminal statute, as properly interpreted, does not prohibit."  Id.  As discussed above, the Court answered that question in the negative.

-15-

More importantly for our analysis, <u>Fiore</u> relied exclusively on the state supreme court's determination of what conduct the criminal statute prohibited at the time of the conviction. In <u>Bunkley</u>, the Court could not answer the <u>Fiore</u> question without determining what conduct the statute criminalized at the time of the conviction, so the Court remanded the case to the state supreme court to make that determination. This court is obviously bound no less than the United States Supreme Court by state supreme court determinations of state law.

Graves argues that, due to the general verdict, his conviction may represent a felony-murder conviction wherein the act that caused the predicate felony is the same act that caused the victim's death. As explained in <u>Goosman v. State</u>, 764 N.W.2d 539, 545 (Iowa 2009), however, such an act *did* constitute felony-murder at the time Graves committed the act (as well as at the time of his trial and throughout the direct appeal process). Until <u>Heemstra</u> was decided in 2006, the Supreme Court of Iowa held that "merger rules [did] not apply" to bar the use of willful injury as the predicate felony in felony murder cases. <u>Goosman</u>, 764 N.W.2d at 541. That rule was "vigorously upheld" in numerous cases. <u>Id.</u> In Graves' trial, the Iowa district court employed a jury instruction based on that firmly established rule. Then <u>Heesmstra</u> held that "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." <u>Heemstra</u>, 721 N.W.2d at 558. When Joel Goosman collaterally attacked his felony-murder conviction and made similar federal due process arguments to those now made by Graves, the Supreme Court of Iowa held that <u>Heemstra</u> "clearly involved a change in law and not a mere clarification." <u>Goosman</u>, 764 N.W.2d at 545. As <u>Fiore</u> and <u>Bunkley</u> demonstrate, we are bound by the Supreme Court of Iowa's holding that a change, rather than a mere clarification, occurred.

The key fact in <u>Fiore</u> was that the defendant was convicted of a crime without proof beyond a reasonable doubt as to each element of the crime, as shown by a

subsequent judicial *clarification*.   That key fact is not present in Graves' case.  The Supreme Court of Iowa said in <u>Goosman</u> that <u>Heemstra</u> had *changed* the law.  Thus, unlike the intervening case law at issue in <u>Fiore</u>, <u>Heemstra</u> does not demonstrate that Graves was convicted of a crime without proof beyond a reasonable doubt of each element. To the contrary, <u>Goosman</u> demonstrates that Graves' trial court correctly applied the felony-murder statute as interpreted by the Supreme Court of Iowa at the time of Graves' trial.

To the extent Graves makes the separate claim that due process requires truly retroactive application of <u>Heemstra</u> (apart from <u>Fiore</u>)—that is, that he is entitled to have his conviction scrutinized in light of intervening case law in a collateral attack—his claim also fails.  "The Supreme Court has held that the Constitution does not require a state's highest court 'to make retroactive its new construction of [a criminal] statute.'"  <u>Henry v. Ricks</u>, 578 F.3d 134, 140 (2d Cir. 2009) (quoting <u>Wainwright v. Stone</u>, 414 U.S. 21, 23-24 (1973)) (alteration in original).

VI.

Accordingly, the judgment of the district court is affirmed.

_____